The People *vs.* Robert M'Collister.    *On Counterfeit Notes.*

The People
    *vs.*
R.M'Collister

The prisoner was charged with having in his possession with intention to utter and pass, and with uttering to John Simonson, a five dollar counterfeit note of the Ontario Bank, and also with having in his possession two other counterfeit notes of the same bank, with intention to pass them, on the 30th day of May, 1823.

The arrest of a prisoner on a charge of felony, is not such a duress as will prevent a confession made by him, while under arrest from being given in evidence to the jury on his trial.

Drawing an order for money contained in a trunk found in the prisoners boarding-house, is a recognition of ownership of the trunk and contents, and it may be given in evidence to the jury.

The case appeared as follows : the prisoner who lived in the upper part of the town, came to the store of Mr. Simonson, 47 Greenwich-street, on the 27th of May, in the evening, and purchased a few trifling articles, amounting to three shillings, and gave in payment a five dollar counterfeit note of the Ontario Bank.

He again came into the store on the 30th, and offered another note of the same amount and description for payment for a quarter of tea. Mr. Simonson, who was in the store, immediately discovered that it was a counterfeit one, and told the prisoner so. The prisoner replied, that he knew from whom he received it. He was taken by Mr. Simonson to the police, and denied being in possession of any other money.

Upon being taken to the police-office and searched, he was found in possession of another counterfeit note of the same Bank, and of the same description, and gave a false account of his residence, connections, conduct, &c. to the police-officer.

*Maxwell, District Attorney,* was proceeding to give in evidence to the jury the confession of the prisoner to Mr. Simonson, when he made the arrest, and during the time he was bringing him to the police-office.

*Price* objected ; he contended that the confession of the prisoner could not be received, inasmuch as he was then

arrested and under duress. The examination of a prisoner
at any time, was only *permitted* by statute, and which ex-
tended only to cases taken in pursuance to its direction, be- The People
fore the proper authority ; that a confession of a prisoner *vs.* R.M'Collister
to questions put to him, while under the operation of sen-
sations and feelings which are inspired by a charge and
arrest for felony, could not be considered as *free* and
*voluntary*, and which would entitle them to be given in
evidence to the jury on his trial.

*Maxwell* replied, that if such an objection was allowed
to prevail, it would exclude every confession made by a
prisoner ; and that the duress complained of, was no more
than existed in every case of arrest, there being no prom-
ises of favor, or threats of injury held out to him, or any
other undue advantage taken of his situation.·

The Court observed, that the free and voluntary con-
fession of a prisoner was, 'at common law, allowed to be
given in evidence to the jury on his trial ; that the Statute
relating to examinations had nothing to do with the vol-
untary confession of a prisoner : his confession might be
given in evidence against him before the statute was made.
It was a particular mode pointed out by the Legislature,
in relation to the examination and confession of a prisoner,
which must be strictly pursued. In this case, no promises
or threats appear to have been held out to him to induce a
confession at the time it was made ; therefore it was a free
and voluntary confession.

The confession of the prisoner was allowed to be given
in evidence to the jury.

It appeared further, from the testimony of Mr. Simon-
son and Lewis B. Corwin, his clerk, that the bills were

NEW-YORK counterfeit; that the prisoner said he lived in Spring-street, June, 1823. and got the bills in New Orleans, and was a married man; The People which were all proved false by the testimony of respecta-
vs.
R.M'Collister ble witnesses.

It was also proved by the police-officers that a trunk was found in the house of Mr. M'Collister, a brother of the prisoner, which contained small quantities of tea and sugar, &c., apparently bought for the purpose of affording an opportunity of changing money, at the respective places at which such articles might be purchased.

*Price* contended, that as the trunk had been found in the house of the prisoner's brother, and not in the house of, or in the possession of the prisoner, neither the trunk nor contents could be given in evidence to the jury against him ; that it was incumbent on the prosecution to show that the trunk belonged to the prisoner, before he should be responsible for it, or what it contained.

*Maxwell*, replied, that it was not denied by the prisoner himself, that he was owner of the trunk ; it was found in the house of a near relative, and admitted by them to belong to him ; and after it was taken to the police by the officers, an order was drawn by the prisoner for money to pay for the services of counsel, &c.

*Price* contended, that all this might well be, and yet the prisoner not be the owner of the trunk, nor the contents of it, and that it was straining the principles of law too far, in the absence of positive proof of property, to infer the ownership of the prisoner.

The Court decided that, as the trunk was found at the house of the prisoner's brother, where he boarded, and af-

ter it was brought to the police-office, he drew an order for <span style="float:right">NEW YORK, June, 1823.</span> money, which it contained, and which was found in it, was such a recognition of the property as would allow the trunk and contents to be given in evidence to the jury.

<span style="float:right">The People<br>vs.<br>R. M'Collister</span>

Small quantities of tea and sugar were found in the trunk, rolled up in separate pieces of paper, &c.

*Maxwell,* rested the case.

It was proved on the part of the prisoner that he was very illiterate, and was a hard working industrious man ; had been at New Orleans about a year since, and was a man of good character, and had never been charged with a crime before.

*Price,* for the prisoner, contended before the jury, that the evidence against him was not sufficient. The best men were liable to, and often were actually deceived by counterfeit money ; and could it be thought strange that the prisoner, who was very illiterate, and of course unacquainted with bank notes, should by accident have them in his possession ? he had shown a good character—was never charged with a crime before, &c.

The Court observed to the jury, that it was of the greatest consequence to free the community of offences of this description : the frequency of the crime, of late, demanded the most serious attention of courts of justice. No man's property is safe while he is subject every day to be defrauded of it by means of this spurious paper. In the case now before the Court, it appears the prisoner lives in the upper part of the town, and came a great distance to purchase of the prosecutor small quantities of tea and

NEW-YORK, June, 1823.

The People vs. R. M'Collister

sugar, for which he passed upon his clerk a counterfeit note, and returned in two or three days and offered another note, of the same bank and description, for another trifling article, when he was arrested ; and upon examining his person, another counterfeit note was found upon him of the same bank and description, after having denied being in possession of any more money. His honor observed, the identity of the bills, and the person of the prisoner had been proved, and that it was the province of the jury to say whether the prisoner had these bills in his possession with an intention to pass, and actually passing them, as laid in the indictment ; and proceeded to notice some circumstances in favor of the prisoner, that it appeared by the testimony that he was a hard working, industrious man, and had, heretofore, sustained a good character, and that in cases where the intent was in issue before the jury, the prisoner ought, and had a right, to have the benefit of it on his trial. It was also proved, that he was illiterate—this circumstance, although no excuse for the crime, might be an argument in favor of his ignorance of the quality of the bills, &c.

The Court left it to the jury to say whether the prisoner was guilty, from all the circumstances of the case, or not.

The jury found him guilty.